John E. BREEN, J.D. Malkemus, R.B. Lewis, J.D. Griffin and Jeannie F. Graham, Plaintiffs-Appellants,

v.

CENTEX CORPORATION, Defendant-Appellee.

No. 81–1527.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1983.

---

Joel H. Pullen, Daniel Sciano, San Antonio, Tex., for plaintiffs-appellants.

Jenkins & Gilchrist, T. Ray Guy, William D. Sims, Dallas, Tex., for defendant-appellee.

Before THORNBERRY, JOHNSON and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

In 1970, appellee Centex Corporation (Centex) acquired Constructional Chemicals, Inc. (CCI) as a wholly owned subsidiary. The acquisition agreement entered into by Centex and CCI provided that CCI stockholders would exchange their stock for Centex stock. Appellants, five CCI stockholders who exchanged their CCI stock for Centex stock, initiated this action alleging that certain misrepresentations made by Centex violated federal and state laws. Specifically, appellants maintained that Centex's conduct gave rise to the following five causes of action: (1) a federal securities action under Rule 10b–5; (2) a state statutory fraud action under section 27.01 of the Texas Business & Commerce Code (hereinafter section 27.01); (3) a Texas common-law fraud action; (4) a Texas Blue Sky Law action; and (5) a breach of contract action. Centex answered asserting that the stockholders' claims were barred by limitations and moved the court to render summary judgment. Concluding that all five stockholders' actions were barred by limitations, the district court rendered summary judgment for Centex on the Rule 10b–5, section 27.01, and common-law fraud actions and dismissed the appellants' pendent Texas Blue Sky law and breach of contract actions without prejudice. This Court, holding that summary judgment was granted improperly as to one of the five stockholders, affirms in part, reverses in part, and remands this case to the district court for further proceedings consistent with this opinion.

I. *Factual Background*

Centex is a publicly held corporation whose subsidiary corporations engage in various aspects of real estate acquisition, sale, and development. CCI, a Texas corporation, manufactures and sells cement additives. On or about July 10, 1970, CCI, Centex, and Ewing Clark Corporation, a wholly owned subsidiary of Centex, entered into an agreement providing that Centex would acquire CCI as a wholly owned subsidiary. According to the acquisition agreement, CCI stockholders were to receive two shares of Centex stock for each share of CCI stock they owned. The CCI stockholders received one-half of the Centex stock outright, but the other one-half was placed in escrow subject to an "earn out" agreement. According to the earn out agreement, CCI stockholders were to receive all

of the escrowed stock if, at the end of any fiscal year between March 31, 1971 and March 31, 1975 (the four-year earn out period), CCI had earned a total of $400,000. If, however, CCI had earned at least $200,000 (but less than $400,000) by the end of the earn out period (March 31, 1975), CCI stockholders would receive a proportional amount of the escrowed stock. Finally, the earn out agreement provided that if CCI's earnings were less than $200,000 during the earn out period, all of the escrowed stock would revert to Centex. During the earn out period, Centex was to "take no action a primary purpose of which is to reduce the net income of Sub [CCI]. . . ." The earn out was never achieved, however, and the stock reverted to Centex upon the termination of the four-year earn out period (March 31, 1975).

The founder and former majority stockholder of CCI, Sanford Bauman, filed suit against Centex on June 16, 1975 alleging essentially the same contentions asserted in this case. *See Bauman v. Centex Corp.*, 611 F.2d 1115 (5th Cir.1980) (hereafter *Bauman*). Bauman's suit went to trial during the summer of 1977 and resulted in a jury verdict in favor of Bauman on June 15, 1977. Thereafter, appellants initiated the instant proceeding on September 9, 1977.

## II. Standard of Review

■ Appellants contend that the district court erred in granting summary judgment on their Rule 10b–5, section 27.01, and common-law fraud claims, since material issues of fact exist concerning when the appellants knew or, in the exercise of reasonable diligence, should have known of the appellee's fraudulent conduct. Rule 56 of the Federal Rules of Civil Procedure authorizes the district court to render summary judgment if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well settled that this Court must view the evidence in the light most favorable to the party resisting the motion when determining the propriety of the district court's granting of a summa-

ry judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Marshall v. Victoria Transportation Co.*, 603 F.2d 1122 (5th Cir.1979); and *Vetter v. Frosch*, 599 F.2d 630, 632 (5th Cir.1979). It is also important to note that this Court is not permitted to assess the probative value of any of the evidence. To the contrary, this Court must only decide whether a genuine issue of material fact exists "so as to insure that factual issues will not be determined without the benefit of the truth seeking procedures of a trial." *Southern Distributing Co. v. Southtown, Inc.*, 574 F.2d 824, 826 (5th Cir.1978).

## III. Statute of Limitations: Which Period of Limitations Controls and When Does It Begin to Run?

In order to determine the summary judgment issue in this case, this Court must answer two preliminary questions. Initially, this Court must determine which period of limitations is appropriate, and, thereafter, this Court must determine when the period of limitations began to run.

### A. What Is the Applicable Period of Limitations?

■ The 1934 Securities & Exchange Act, which gives rise to appellants' Rule 10b–5 action, sets no period of limitations. As a result, courts have been forced to analyze the law of the forum state and apply the period of limitations that the forum state applies to the state cause of action bearing the closest substantive resemblance to the implied cause of action arising under the federal securities laws. *See McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888 (5th Cir.1979). In *Wood v. Combustion Engineering, Inc.*, 643 F.2d 339 (5th Cir.1981), after careful analysis of the substantive laws of Texas resembling federal securities laws, this Court held that the two-year statute of limitations applicable to actions brought under section 27.01 of the Texas Business & Commerce Code should be applied to a 10b–5 claim arising in Texas. Accordingly, this Court concludes that a two-year period of limita-

tions must be applied to the appellants' Rule 10b–5 claims. Additionally, Texas law indicates that the two-year period of limitations should also be applied to the state statutory and common-law fraud actions. *See L.C.L. Theaters, Inc. v. Columbia Pictures Industries, Inc.*, 566 F.2d 494, 496 (5th Cir.1978); *National Founders Corp. v. Central National Bank*, 521 S.W.2d 92, 96 (Tex. Civ.App.—Houston [14th] 1975, writ ref'd n.r.e.); *Ryan v. Collins*, 496 S.W.2d 205, 210–11 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.).

**B.** *When Does the Statute of Limitations Begin to Run?*

▋ Having concluded that a two-year period of limitations is applicable, this Court must determine "when the clock starts running for the purpose of applying the borrowed statute of limitations...." *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 8 (5th Cir.1967); *see also Janigan v. Taylor*, 344 F.2d 781, 784 (1st Cir.1965). Although the *period* of limitations is determined according to state law, *see Wood v. Combustion Engineering, Inc.*, 643 F.2d 339 (5th Cir.1980), federal law determines when the period of limitations begins to run. In *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888 (5th Cir.1979), this Court held that "the period of limitations applicable to implied causes of action under section 10(b) and section 7 begins running only when the plaintiff discovers, or in the exercise of reasonable diligence should discover, the alleged violations." *Id.* at 893 n. 11. Accordingly, the limitations period on the appellants' 10b–5 action began to run when the appellants knew or, in the exercise of reasonable diligence, should have known of the appellee's alleged fraudulent conduct.

This also appears to be the appropriate test for determining when the limitations period began to run on the appellants' section 27.01 and common-law fraud claims. *See L.C.L. Theaters, supra; Bush·v. Stone*, 500 S.W.2d 885, 889 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.).[1] Therefore, this Court must ultimately determine, pursuant to the appropriate summary judgment analysis, whether the district court erred in concluding that all five plaintiffs either knew or, in the exercise of reasonable diligence, should have known of the appellee's fraudulent conduct more than two years prior to the initiation of the case *sua sponte.*

**IV.** *Statute of Limitations and the Appellants' Claims*

▋ Appellants contend that the district court erred in granting a summary judgment since material fact issues exist concerning when they knew or, in the exercise of reasonable diligence, should have known of Centex's allegedly improper conduct. Certain facts relied upon by Centex in its motion for summary judgment apparently were accepted by the district court and applied across-the-board to all five appellants. Specifically, the district court relied upon the following three facts to support its granting of summary judgment against all five appellants: (1) the fact that the escrow agreement terminated on March 31, 1975 and the stock reverted to Centex; (2) the fact that Sanford Bauman was terminated as president of CCI in March 1974 and soon thereafter indicated that the earn out could not be achieved; and (3) the fact that the prior suit (*Bauman*) was filed by Bauman. This Court holds that these three

---

1. It is noted that this Court is aware of the Texas law holding that a misrepresentation *alone* does not create a cause of action for fraud. The Texas courts have held that no cause of action accrues until the innocent party suffers a legal injury. *See Bauman v. Centex,* 611 F.2d at 1119 and cases cited therein. However, in the context of this case, limitations analysis on the Rule 10b–5, § 27.01, and common-law fraud claims would appear to be identical. Regardless of whether the Rule 10b–5 actions accrued prior to the state claims, appel-

lants would be barred by limitations on all three claims if they knew or, in the exercise of reasonable diligence, should have known of Centex's allegedly illegal conduct more than two years prior to the initiation of this action. This action was commenced on September 9, 1977. Therefore, the critical inquiry in this case is whether appellants knew or, in the exercise of reasonable diligence, should have known of Centex's conduct prior to September 9, 1975, long after appellants had suffered legal injury on March 31, 1975.

facts alone did not warrant summary judgment as to all five appellants. However, this Court does find sufficient summary judgment proof to support the district court's decision as to four of the five appellants.

At the outset, the fact that the earn out agreement terminated on March 31, 1975 and the escrowed stock reverted to Centex would not apprise the appellants of Centex's allegedly fraudulent conduct. It would be illogical to conclude that all five appellants knew, or in the exercise of reasonable diligence, should have known of Centex's fraudulent conduct simply because the earnings level set forth in the earn out agreement had not been reached by CCI. A myriad of valid business reasons could have caused CCI's lack of productivity. Nothing in the record demonstrates that the appellants should have attributed CCI's lack of earnings to Centex's allegedly fraudulent conduct. Thus, the mere fact that CCI failed to reach one or more of the earnings levels set forth in the earn out agreement would not support the district court's granting of a summary judgment as to all five appellants.

The second fact relied upon by the district court in support of its summary judgment involves Sanford Bauman. It is necessary to appreciate the relationship Bauman had with Centex and CCI. Bauman was the founder and majority shareholder of CCI and he actively engaged in negotiations with Centex on the acquisition agreement. Also, after CCI was acquired by Centex, Bauman became intimately familiar with Centex and its relations with CCI since he was the president of CCI. Unlike Bauman, the appellants were mere passive investors unfamiliar with the detailed nego-

tiations surrounding the acquisition agreement and the day-to-day business dealings between CCI and Centex. It would ignore reality if it were concluded that all facts known by Bauman were necessarily known by appellants. Centex presented no summary judgment evidence demonstrating beyond material factual dispute that Bauman was the appellants' agent. Hence, neither the fact that Bauman was released as president of CCI, nor the fact that Bauman knew that the earn out would not be achieved more than two years prior to the initiation of this action is controlling. *United ed States v. Currency Totalling $48,318.08*, 609 F.2d 210, 215, *reh'g denied*, 612 F.2d 579 (5th Cir.1980); and *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1171 (5th Cir.1979).[2]

Similarly, the third factor relied upon by the district court—the filing of suit in *Bauman*—does not support a summary judgment as to all five appellants. *See In Re Beef Antitrust Litigation*, 600 F.2d at 1171. However, when taken in connection with the other summary judgment evidence presented to the district court, it does support a summary judgment as to four of the appellants.

■ The evidence presented to the district court judge demonstrates that four of the five appellants knew of Bauman's intention to sue Centex either before suit was filed or shortly thereafter, had communications with him concerning the suit, and had the opportunity to question Bauman concerning the basis for his suit against Centex. Appellant Breen admitted in his deposition that he knew of Bauman's intention to sue Centex before suit was filed and, during a conversation with Bauman, recom-

2. Of course, as will be discussed in the following portion of this opinion dealing with the facts of each appellant's case, information actually communicated to one or more of the appellants could place the informed party(s) upon notice of such facts as would, in the exercise of reasonable diligence, apprise the informed party(s) of Centex's allegedly improper conduct. However, the mere fact that Bauman knew of Centex's allegedly improper conduct would not support the granting of summa-

ry judgment as to all of the appellants absent the movants' demonstration beyond material factual dispute that Bauman was the appellants' agent. The movants were required to demonstrate that the knowledge possessed by Bauman was communicated to the appellants so as to inform them of Centex's conduct or of knowledge of such facts as would, in the exercise of reasonable diligence, lead them to the conclusion that they should have known of Centex's conduct.

mended a law firm to handle the case.[3] Appellant Malkemus admitted in his deposition that he knew of Bauman's intention to file suit and, during a similar discussion with Bauman, volunteered to pay part of the legal expenses incurred in suing Centex.[4] Additionally, appellant Griffin was also involved in communications with Bauman prior to the filing of suit in *Bauman* and was aware of Bauman's dispute with Centex. Record, vol. II at 376–79. Appellant Lewis stated during deposition that he knew that Bauman was going to sue Centex prior to the actual filing of suit.[5] Although Lewis claims not to have known of the specific facts giving rise to his present claims until Bauman obtained a successful

verdict, the evidence presented to the district court judge demonstrated beyond material factual dispute that Lewis knew that Bauman was going to sue Centex and could have, in the exercise of reasonable diligence, discovered the facts giving rise to his present claim more than two years before the filing of this suit.

Bauman's suit against Centex, alleging essentially the same claims as are asserted in the case at bar, was filed on June 16, 1975, more than two years before the filing of the instant case. Here, summary judgment evidence demonstrated as a matter of law beyond material factual dispute that appellants Breen, Malkemus, Griffin, and

3. Breen's deposition contains the following testimony:

Q. Did you know when Mr. Bauman filed his suit against Centex?
A. I knew Mr. Bauman was going to file suit against Centex.
Q. Did you consider at that time filing suit on your own?
A. I didn't know enough about it and I frankly suggested to Mr. Bauman that he retain Tinsman and Houser as counsel because I thought they were very competent and I didn't know enough about it as to whether I had been damaged or not to file suit.

Record vol. II at 360.

4. Malkemus' deposition contains the following testimony:

Q. You knew when Sandy Bauman was about to file suit, correct?
A. Yes.
Q. Did he talk to you about joining in that suit?
A. Sandy told me that he and Stacy Smith were going to file suit and Sandy asked, did I want to become a partner to it and he said I didn't have to be—almost in the same words, that he would as a minority stockholder—my interest would be protected if their suit was successful. If the suit wasn't successful, he would expect and I would pay my proper portion of the shares based on my stock holdings on the costs incurred by the attorneys which was to be a maximum of $5,000, and I said, yes, I would, and I had enough worries on my hands at Reichold that I didn't really have any time to become a party in the suit itself.
Q. You did agree then to pay a portion of the expenses if the suit were lost?
A. That's correct.
Q. To your knowledge, did the other minority shareholders also do the same?

A. I don't know that.
Q. And you believed that if Bauman's suit were successful, you could then sue to recover some money yourself?
A. It was my impression that if the Bauman suit was successful, it was an automatic thing. I did not realize—did not know and I don't think Sandy did, either that there was any distinction.
Q. Did Sandy tell you it was an automatic thing?
A. No, not in those words. Those were my words.
Q. Do you recall what words he used?
A. Well, that we should also—we minority shareholders would also benefit.

\* \* \* \* \* \*

Q. If you are correct in your memory as you said you were almost certain that Sandy told you prior to his suit coming to trial that you would have to file suit on your own, if that memory is correct, do you know why you did not file suit at that time prior to his suit coming to trial?
A. Again, I want to emphasize that this matter, although in retrospect maybe I should have done things and others should have done things we didn't do, didn't know all the details about what was going on. I was very occupied with my own business at Reichold Chemicals.

Malkemus' Deposition at 44–48.

5. Lewis' deposition contains the following testimony:

A. He was going to sue them and I believe he won.
Q. Did he tell you at the time he was filing there was no need for you to file suit?
A. He led me to believe if he won his suit, I would be entitled to the same damages.

Record, vol. II at 364.

Lewis, although passive investors, were actively engaged in communication with Bauman prior to the filing of his case and either knew or, in the exercise of reasonable diligence, should have known of the reasons causing Bauman to file his suit. Accordingly, this Court holds that the district court correctly entered summary judgment as to appellants Breen, Malkemus, Griffin, and Lewis.

■ Unlike appellants Breen, Malkemus, Griffin, and Lewis, Jeannie F. Graham had no communication with Bauman prior to the initiation of his suit. Appellant Graham acquired her stock in CCI pursuant to a divorce settlement with her former husband, James D. Erwin. Graham testified that she did not have any business contacts with Bauman at any time prior to the initiation of the *Bauman* suit and the evidence indicates that Graham had only minimal social contact with Bauman. Furthermore, Graham let her former husband take care of the CCI-Centex business. *See* Record, vol. II at 332. Graham testified that she did not know about the *Bauman* suit until Bauman called her and informed her that he had obtained a judgment against Centex. *Id.* at 337–39. The jury verdict in *Bauman* was not returned until June 15, 1977, a few months before the initiation of this action on September 9, 1977. Appellant Graham was not actively engaged in communication with Bauman, as were the other appellants, and apparently did not even know about a dispute with Centex until Bauman called her and told her that he had obtained a verdict against Centex. Clearly, a material fact issue exists as to whether Graham knew or, in the exercise of reasonable diligence, should have known of Centex's conduct. This Court, noting once again that summary judgment is inappropriate if a material fact issue exists, must conclude that the district court erred in granting summary judgment against appellant Graham.

## V. *Appellants' Pendent Claims*

■ Appellants maintain that the district court erred by dismissing their pen-

dent Texas Blue Sky law and breach of contract claims. As noted previously, the district court refused to exercise its jurisdiction over appellants' pendent claims after it granted a summary judgment on their Rule 10b–5, section 27.01, and common-law fraud claims. Dismissing appellants' pendent claims, the court stated:

> With the dismissal of plaintiffs' sole federal claim, and with no other basis for federal jurisdiction appearing in the record, it is hereby ORDERED that Counts IV and V are dismissed without prejudice to their being refiled in state court.

The district court's statement is vague in that it does not clearly demonstrate whether the district court dismissed the pendent claims because it concluded that no jurisdictional basis existed to hear the pendent claims or, because, after exercising its discretion, it concluded that it was most judicious to dismiss the pendent claims. If the district court concluded that it was without jurisdiction to hear the pendent claims, this Court would be compelled to conclude that the district court erred in dismissing the pendent claims. It is well-settled that the federal district court has the *power* to hear pendent state claims even though it has disposed of the federal claim that originally invoked its jurisdiction. *See Hagans v. Lavine,* 415 U.S. 528, 545–46, 94 S.Ct. 1372, 1383, 39 L.Ed.2d 577 (1974); *Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970); *United Mineworkers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). On the other hand, if the district court was aware that it had the power to hear the pendent claims but, nevertheless, concluded that the most judicious course was dismissal of the pendent claims, this Court would be compelled to determine whether the district court abused its discretion by dismissing the pendent claims. The ambiguous nature of the district court's judgment and the necessity of allowing the district court to consider an issue apparent in the record but not briefed by the parties on appeal lead this Court to refuse to address the propriety of the dismissal of appellants' pendent claims.

Appellants originally filed this action on September 9, 1977. Significantly, however,

appellants did not file a "protective" state lawsuit at that time. In fact, appellants concede that they did not file a protective suit until December 10, 1981. *See Breen v. Centex Corp.,* No. 329020 (261st District Court, Travis Co., Texas, filed December 10, 1981). Consequently, an issue arises as to whether limitations continued to run against appellants' pendent Texas Blue Sky law and breach of contract actions during the pendency of this case in federal court. If limitations did continue to run in the Texas courts, the district court's dismissal would appear to bar the appellants from pursuing their pendent actions in the Texas courts.[6] This issue, which is apparent from the record, could certainly weigh heavily upon the district court's determination on whether dismissal of appellants' pendent claims is the most fair and judicious course. Consequently, this Court abstains from ruling on the propriety of the district court's actions in this respect and places it upon the district court, in the exercise of its discretion, to consider the possible hardship placed upon appellants should the pendent claims be dismissed.

## VI. *Appellants' Plea for Collateral Estoppel*

**[11]** In appellants' final point of error, they contend that the district court erred by refusing to grant summary judgment in their behalf since Centex suffered an adverse judgment in *Bauman.* Indeed, *Bauman* was based on allegations very similar to those made in the present suit. A review of *Bauman* indicates that the jury made findings of fact favorable to Bauman "on each of the fraud, breach of escrow contract, and securities law claims...." *Bauman,* 611 F.2d at 1117. It also appears that Centex attacked the district court's judgment on each of the theories of recovery on appeal. However, in *Bauman,* this Court refused to address all of the possible theories of recovery on appeal, and, instead, affirmed the district court's judgment on only one theory of recovery. This Court stated: "The state law fraud claim by itself supports all of the damages assessed for the plaintiffs as a group, both actual and exemplary, including attorney's fees. If this claim is upheld it will be unnecessary to reach the breach of escrow contract or federal securities law claims." *Id.* Thus, it is apparent that this Court's affirmance in *Bauman* was based only upon the section 27.01 claim. This would not appear to provide a basis for application of collateral estoppel on the other causes of action asserted in the *Bauman* case but not ad-

---

**6.** Article 5539a of Vernon's Annotated Civil Statutes provides:

> When an action shall be dismissed in any way, or a judgment therein shall be set aside or annulled in a direct proceeding, *because of a want of jurisdiction of the Trial Court in which such action shall have been filed,* and within sixty (60) days after such dismissal or other disposition becomes final, such action shall be commenced in a Court of Proper Jurisdiction, the period between the date of first filing and that of commencement in the second Court shall not be counted as a part of the period of limitation unless the opposite party shall in abatement show the first filing to have been in intentional disregard of jurisdiction.

Whether this statute will aid the appellants is unclear. The statute clearly states that it applies only when an action is dismissed "because of a want of jurisdiction." However, as is pointed out in the text, the district court did have jurisdiction to hear the pendent claims under existing law. *See Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), *Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970), *United Mineworkers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). It is possible that the Texas tolling statute is inapplicable since the district court's dismissal was arguably not jurisdictional in nature. *See Oram v. General American Oil Co.,* 503 S.W.2d 607, 609 (Tex. Civ.App.—Eastland 1973, writ ref'd n.r.e.), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1355, 43 L.Ed.2d 441 (1975) (holding that "Article 5539 affords relief only when the dismissal of the former action was for lack of jurisdiction...."). *But see Republic Nat'l Bank of Dallas v. Rogers,* 575 S.W.2d 643 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.) Clearly, this issue is not without difficulty. Since it is significant, however, and since the issue has not been briefed and argued by the parties or addressed by the district court, this Court declines to make a premature decision on this issue and directs the district court's attention to this issue when determining the propriety of dismissing appellants' pendent claims.

**916**

dressed by this Court on appeal. *See Rufe-nacht v. Iowa Beef Processors, Inc.,* 492 F.Supp. 877 (N.D.Tex.1980), *affirmed,* 656 F.2d 198 (5th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 462; *see also* Moore Fed.Pract. ¶ 0.416[2] at 2231 n. 10 and cases cited therein. However, this Court has held that the district court correctly entered summary judgment against appellants Breen, Malkemus, Griffin, and Lewis on their Rule 10b–5, section 27.01, and common-law fraud actions. Hence, these four appellants have no basis for asserting that collateral estoppel should be applied so as to allow them to recover under section 27.01. But, appellant Graham may have the basis for an application of collateral estoppel on the section 27.01 cause of action alone if the district court determines, after resolving the material factual disputes involved in appellant Graham's case, that she is not barred from asserting a section 27.01 action. This issue is to be decided by the district court upon remand should it conclude that appellant Graham is not precluded by limitations from asserting a section 27.01 cause of action.

**VII.** *Conclusion*

This Court holds that the district court properly granted summary judgment as to appellants Breen, Malkemus, Griffin, and Lewis, but erred in granting summary judgment as to appellant Graham. This case is affirmed in part, reversed in part, and remanded to the district court for further consideration of appellant Graham's claims.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.