**Sheila BACHEMIN, Wife of/ and Patrick Bachemin**

v.

**MITSUIE AND COMPANY (USA, INC.) et al.**

**Civ. A. No. 87–0477.**

United States District Court, E.D. Louisiana.

May 17, 1989.

---

REASONS

HEEBE, Chief Judge.

This cause came on for hearing on a previous day on the motion of defendant, Yodogawa Steel Works (hereinafter referred to as "Yodogawa"), for reconsideration of the Court's previous ruling on defendant's motion for dismissal for lack of subject matter jurisdiction. On April 14, 1989 the Court ruled on defendant's motion, denying it. Further, the Court decided not to exercise its pendent claim jurisdiction over plaintiffs' remaining claims, all of which are based on state law. These claims were dismissed without prejudice. The Court is now ready to assign written reasons for its rulings.

A full account of the procedural history of this suit can be found in a minute entry dated May 10, 1989. The issue now before the Court is whether the Court has subject matter jurisdiction over plaintiffs' cause of action. Yodogawa contends that the cause of action lacks the "maritime flavor" neces-

sary to bring it within the admiralty jurisdiction of the Court.

A brief summary of the relevant facts is in order. Plaintiffs, Patrick and Sheila Bachemin, filed this action for damages on February 10, 1987. Movant herein was made one of the numerous defendants. The suit arises out of an injury allegedly sustained by Patrick Bachemin on February 14, 1986 while he was working as a cargo checker for T. Smith & Sons. Plaintiff was inspecting steel coils which had been unloaded from the M/V LUCID STAR 5 days before. In the interim the coils had been stored in a warehouse adjacent to the First Street wharf. They were being moved onto a delivery truck parked on the loading ramp of the wharf. Plaintiff was allegedly injured when a pallet, on which one of the coils was packaged, cracked, causing the coil to fall on him.

Plaintiffs allege jurisdiction under Section 905(b) of the Longshoremen's and Harbor Workers' Compensation Act (hereinafter referred to as the "LHWCA" or "the Act"), 33 U.S.C. § 901 *et seq.*, 28 U.S.C. § 1331, and the "applicable substantive laws of the State of Louisiana". (Plaintiffs' Amended Second Supplemental and Amending Complaint, ¶ 2). Section 905(b) of the Act provides a cause of action based on vessel negligence. It provides only a cause of action; it does not provide a grant of subject matter jurisdiction. In order to pursue an action under Section 905(b), plaintiffs must show that the Court has admiralty jurisdiction. In other words, plaintiffs must allege and show jurisdictional grounds for a maritime tort. As the Fifth Circuit has stated, "to be cognizable under § 905(b), a tort must occur on or in navigable waters subject, of course, to the special provisions of the Admiralty Extension Act, and there must be the traditional admiralty nexus." *Richendollar v. Diamond M. Drilling Co., Inc.*, 819 F.2d 124 (5th Cir.1987). In effect, Section 905(b) claims are limited by the requirements for maritime torts set up in *Executive Jet Aviation, Inc., v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) and *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300

(1982). These cases held that, in addition to occurring on or over navigable waters, the wrong must bear a significant relationship to "traditional maritime activity." 409 U.S. at 268, 93 S.Ct. at 504.

■ In the case at bar, the accident occurred on the First Street wharf, which is obviously not on or over navigable waters. Plaintiffs aver that this requirement is satisfied through the provisions of the so-called Admiralty Extension Act, 46 U.S.C. § 740, which extends the Court's admiralty jurisdiction to claims caused by a vessel on navigable water even when those injuries occur on land. Plaintiffs have alleged that a contributing cause of the injuries caused was the negligent mishandling of the cargo "while it was being shipped over the navigable waters of the United States aboard a vessel." (Plaintiffs' Opposition to Motion of Yodogawa to Dismiss for Lack of Subject Matter Jurisdiction, p. 2). Such allegations are sufficient to satisfy the situs prong of the admiralty jurisdiction test.

The next issue is whether the "nexus" prong has been satisfied. At the outset the Court would note that once it has been decided that subject matter jurisdiction exists, the Court's subsequent dismissal of the vessel's time charterers does not act to retroactively deny the Court of subject matter jurisdiction. The Court's determination of whether it had jurisdiction should not be upset by a subsequent determination on the merits that the time-charterers were not liable for the damages caused. Yodogawa's assertion that the Court's grant of summary judgment in favor of the time-charterers of the M/V LUCID STAR indicates "that there is no vessel involvement in the tort of which plaintiff complains" (Yodogawa's *Motion for Leave to file Supplemental Memorandum*, p. 1) simply overstates the Court's ruling. Actual vessel involvement has not been determined since the vessel's owner, Sun Lines, has never been served. The Court's decision regarding time-charterer involvement was a decision on the merits of plaintiffs' claim against these defendants, made after the submission of evidence regarding time-charterer involvement in the loading and

unloading process. Had plaintiffs been able to show that the parties had agreed, either by usage or by actual agreement, to alter the traditional time-charterer involvement in the loading process, then dismissal of these parties would not have been proper.

After applying the four-factor test outlined by the Fifth Circuit in *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir.1973), the Court determined that the claim met the maritime nexus test. The four factors which may be considered in determining the existence of a substantial maritime relationship are: (i) the functions and roles of the parties; (ii) the types of vehicles and instrumentalities involved; (iii) the causation and type of injury; (iv) traditional concepts of the role of admiralty law.

The principal parties involved are: plaintiff, a cargo checker; Yodogawa, the manufacturer of the galvanized steel coils and allegedly defective wooden pallets; Mitsui, a Japanese trading company; Tom's Lift Service, the operator of the forklift; Showa Lines, the original time-charterer; and Toko Kaiun Kaisha, Showa's sub-time-charterer. Plaintiff's role as a cargo checker on a wharf is maritime in nature. He played an important role in the system of maritime commerce. Yodogawa's role as manufacturer has little or no connection to maritime commerce. Mitsui's role, on the other hand, as an agent in international maritime trade, was substantially related to maritime commerce. Both Showa Lines and Toko Kaiun Kaisha, as time-charterers of a vessel, were related to maritime commerce. This factor clearly weighs in favor of the existence of admiralty jurisdiction.

The vehicles and instrumentalities involved were a steel coil, a wooden pallet, a forklift, and a truck. None of the instrumentalities are inherently maritime in nature although forklifts are often used in loading and unloading activities. This factor weighs neither for, nor against, the existence of admiralty jurisdiction.

The third factor to be considered is causation. The exact cause of the accident is not known in that it is unclear what caused the wooden pallet to be cracked. One possible explanation is that the pallet was defectively manufactured. The manufacture of a defective pallet is not maritime in nature. Another possible explanation is that the pallet was mishandled sometime during the journey from Japan to the United States. The mishandling of cargo during loading, shipment or unloading has a substantial relationship to maritime activities. This factor weighs slightly in favor of the existence of admiralty jurisdiction.

Finally, the court must consider traditional concepts of the role of admiralty law. The court in *Kelly v. Smith* made the following observation about this factor: "The admiralty jurisdiction of federal courts stems from the important national interest in uniformity of law and remedies of those facing the hazards of waterborne navigation." 485 F.2d at 526. Patrick Bachemin did not face the hazards of waterborne navigation. Nor is there a national interest in seeing that all cases of this type be decided uniformly. The interest of the state of Louisiana is as important as the national interest. After weighing all of the factors together the Court concludes that admiralty jurisdiction did exist.

It just so happens that at this point all the maritime-based claims have been dismissed, leaving only claims based on state law. Federal courts have pendent claim jurisdiction over claims based on state law when the "state and federal claims ... derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed. 2d 218 (1966). Once the federal claims have been dismissed, the question presents itself as to whether the federal court should retain the claims based on state law. The Fifth Circuit has recently espoused the following position: "[i]t is well-settled that the federal district court has the *power* to hear pendent state claims even though it has disposed of the federal claim that originally invoked the jurisdiction." *Breen v. Centex Corp.*, 695 F.2d 907, 914 (5th Cir. 1983) (emphasis in original). Thus, a district court has discretion in determining whether to exercise its pendent jurisdiction. But, as the Supreme Court emphasized in

*Gibbs*, merely because the federal court has the jurisdiction or power to hear a state law claim does not mean that the district court must exercise that power. 383 U.S. at 726, 86 S.Ct. at 1139. That is true even where viable federal claims still exist.

■ The *Gibbs* court indicated that the following factors should be considered in determining whether a court should retain jurisdiction over state-law claims: judicial economy and convenience and fairness to the litigants. *Id.* at 726, 86 S.Ct. at 1139. It will not be more judicially economical for this Court to try the case. There is no reason to believe that a trial in federal court will be more convenient or fair to the litigants. Nor is it a concern, as is sometime the case, that plaintiffs' state-law claims are time-barred since they have a "sleeper" case filed in state court. Moreover, the Supreme Court, in *Gibbs*, cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* In application of the policies discussed herein, this Court has decided to dismiss plaintiffs' remaining claims.