Doretha MITCHELL, Plaintiff-Appellee,

v.

M. D. ANDERSON HOSPITAL, et al., Defendants-Appellants.

No. 81–2407
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 25, 1982.

Iris J. Jones, Asst. Atty. Gen., Austin, Tex., for defendants-appellants.

Zinetta A. Burney, Houston, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Doretha Mitchell brought this suit against the M. D. Anderson Hospital in Houston, Texas, and certain of its administrative and supervisory personnel, claiming three instances of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Ms. Mitchell, a black female, began employment as a technician in the respiratory therapy department of the Hospital on January 26, 1968. She became a certified technician in 1970 and a registered respiratory therapist in 1975. For several months in 1971 she acted as the chief respiratory therapist, and from 1968 until her termination in 1979, she was the supervisor of her shift. Until August 1977, when she applied for the position of assistant chief therapist, she had never received an unfavorable evaluation. The record shows she was the only black respiratory therapist employed by the Hospital.

A month after her application for the vacant position of assistant chief therapist, Raul Rowe, the chief respiratory therapist, evaluated Mitchell. She was rated as meeting the required standard in three areas and being below standard in five areas. In a memorandum sent to the personnel manager, Rowe outlined three reasons why he felt Mitchell should not be promoted: she was unable to get along with others; she had a generally negative attitude regarding her job; and she was absent excessively. A white female was given the promotion.

Approximately nine months later, in June 1978, an assistant chief therapist position again became available, and Ms. Mitchell applied. Two days after her application she was placed on probation, and this disqualified her from promotion. She was placed on probation purportedly because she refused to follow an order of a doctor to have a sputum test carried out on a patient. Approximately six months after being placed on probation, she was terminated because of a number of alleged incidents which had occurred during the probationary period.

After complaint to the Equal Employment Opportunity Commission, Ms. Mitchell brought this Title VII suit. The district court found that she had established a prima facie case, that even if the hospital had advanced legitimate reasons for denying plaintiff promotions, Mitchell had established the reasons advanced were pretexts masking racial discrimination in the two instances of non-promotion and in her discharge. She was given judgment in the sum of $20,123.52 as damages plus $8,785.95 as attorney's fees and costs. M. D. Anderson Hospital and the named defendants appeal.

■ Except for one minor point briefly discussed at the end of the opinion, the appeal in this case turns upon the findings of fact in the district court. The scope of our review of such findings has recently been substantially narrowed by the United States Supreme Court in the case of *Pull-*

man-Standard v. Swint, 451 U.S. 906, 101 S.Ct. 1972, 68 L.Ed.2d 293 (1982). Under Swint the ultimate issue in a Title VII case, whether there was intentional discrimination, even though an issue of "ultimate fact", is a purely factual issue under Title VII. As such it is subject to Rule 52 of the Federal Rules of Civil Procedure which limits the reviewing court to the clearly erroneous standard in reviewing the facts as found by the trial court. We, therefore, review the findings of fact of the district court, including the finding of intentional racial discrimination, under the clearly erroneous standard.

The first step in reaching a decision is to inquire as to whether the plaintiff established a prima facie case of racial discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Plaintiff Mitchell met the burden of showing a prima facie case. It was stipulated by the parties that she is black. As to the requirement that she be qualified, the position of chief respiratory therapist requires registration with the National Board for Respiratory Therapy, and Ms. Mitchell was registered and met all the requirements for the position. The position also required extensive supervisory experience over large numbers of people. Mitchell met the experience qualification since she had been supervisor of her shift from virtually the beginning of her employment. For several months in 1971 she had acted as chief respiratory therapist. Finally, it was undisputed that the position was given to a white female.

In the second instance of non-promotion when Mitchell again applied, her overt qualifications were the same, and again the position was given to a white female.

■ Finally, the evidence of the circumstances surrounding the two denials of promotion, being placed upon probation, and discharge a short time thereafter, together establish a prima facie case of racial discrimination as retaliation for filing a complaint with the Equal Employment Opportunity Commission. It need only be mentioned that until she first applied for promotion, her ratings had always been above

the required level, and they immediately dropped thereafter. We conclude that the district court's findings of fact establishing a prima facie case of three instances of racial discrimination in employment by appellant Hospital against appellee Mitchell were not clearly erroneous.

■ At this point the burden shifted to the employer to show legitimate non-discriminatory reasons for rejecting Ms. Mitchell's promotions. The burden is one of production, not persuasion. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). To meet this burden the Hospital showed three reasons for the first promotional rejection: (1) Mitchell was unable to get along with others; (2) she had a generally negative attitude regarding her job; (3) she was absent excessively. As to her ability to get along with others, there was ample testimony in the record from witnesses that she was a good supervisor and that she got along well with her staff, assuming the district court credited that testimony. There was some testimony that she did not get along very well with employees who did not work hard.

To refute the contentions that she did not get along with others and had a negative attitude regarding her job, there is evidence, of course, that she was in the supervisory position for nine years before she applied for a promotion, and during that period did not receive an adverse evaluation. At the time of her last evaluation before she applied for the first promotion she was rated as above standard in her ability to get along with others and her overall ratings were considerably above required levels. According to her supervisor, Mr. Rowe, her inability to get along with personnel was based upon statements from two employees. One of the employees was a man who had told other employees that he resented working under a woman, and the other was a woman who had a record of excessive absenteeism, and Ms. Mitchell as her supervisor had reprimanded the employee.

With respect to the contention that Mitchell was absent excessively, the record

shows that there were other employees in higher positions of authority who had worse records of absenteeism. Further, the hospital had no policy of inquiring into the reasons for absences. There is also evidence in the record that Ms. Mitchell's supervisor had not applied to all supervisors the same criteria regarding absences.

As to the second refusal to promote, the placing of plaintiff on probation, and the subsequent discharge, the Hospital alleges poor judgment with respect to many incidents. The first of these was briefly mentioned earlier as a refusal to have a sputum test carried out on a patient under orders from a physician. The explanation in the record is that she was not confronted directly with this request but only through another nurse, and that she told the nurse to tell whoever was requesting the test that this work was not done under the particular circumstances. She further told the nurse to remind the caller that there was a specific hospital procedure: the office should be called and a specific order given to the secretary to get a technician to obtain the specimen. It was also shown that Ms. Mitchell was not informed that the order came directly from a physician.

There were a number of other similar complaints, all of which reveal, on analysis, a strong attempt to create a record against Mitchell, if Mitchell and the witnesses who supported her were to be believed. Belief in those witnesses was, of course, the prerogative of the district court.

It was complained that Mitchell improperly advised another hospital employee on the setting of a ventilation machine. Yet the testimony of that other employee vindicated Mitchell because she testified that she never told Mitchell she had a patient on the machine, and she gave Mitchell the incorrect name of the machine.

Mitchell was also charged with allowing the Post Operation Care Unit (POCU) to be inadequately staffed. The testimony revealed that on her supervisor, Mr. Rowe's, instruction, the secretary had called the two technicians who staffed POCU to come to a meeting.

It was also undertaken to blame Mitchell for an incident involving a dispute between two other technicians involving who should start a nebulizer. One of the technicians had gone on her coffee break, and the other technician refused to start the nebulizer because there was no written order. The technician left POCU and went directly to Mitchell. Mitchell was charged with the incident because she should have told the technician to call her rather than allow her to come and talk to her.

Mitchell was also charged with not handling the case of a particular patient personally. The patient was leaving the hospital and needed his tracheotomy tube changed. Mitchell stated that a doctor would have to be called to change the tube and paged the doctor to do so. But the doctor arrived after her supervisor, Mr. Rowe, and another doctor had changed the tube. Mr. Rowe accused Mitchell of poor judgment for not going to the patient immediately.

On the basis of this evidence it cannot be concluded that the asserted grounds by appellant Hospital for non-promotion and ultimate discharge were the actual motives for the decisions made. The district court found on the basis of this evidence that the explanations by the hospital were pretexts to cover racial discrimination, and we cannot find that conclusion, now subject to the clearly erroneous standard of review, *Swint, supra*, is incorrect. The court placed the burden of proof on the plaintiff to prove that the explanations of defendant-appellant Hospital were pretext, and found that the burden of proof had been satisfied.

Finally, on the merits, appellants contend that the district court abused its discretion by excessively participating in the trial and by showing partiality to the plaintiff. No such objection was made at the trial. This issue is raised for the first time on appeal. Absent a showing of denial of a fair trial, which would result in a miscarriage of justice, *Calmaquip Engineering West Hemisphere Corp. v. West Coast Carriers, Ltd.*, 650 F.2d 633, 637 (5th Cir. 1981), we do not consider issues only raised

for the first time on appeal. *Wright v. Hartford Accident & Indemnity Co.*, 580 F.2d 809, 810 (5th Cir. 1978). We need only observe that there was no blatant intrusion by the judge in the trial of this case which would lead to a fundamental miscarriage of justice.

Appellants also contend that the district court erred in awarding attorney's fees because the attorneys never filed affidavits to support their fees. Actually, a statement was filed, but it was not sworn.

 The awarding of attorney's fees is within the court's discretion. *Merriweather v. Hercules, Inc.*, 631 F.2d 1161, 1168 (5th Cir. 1980). The district court thoroughly analyzed and balanced the factors used as guidelines in setting attorney's fees, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), and made its own findings with respect to the amount of attorney's fees. Its award of attorney's fees and expenses is substantially below that claimed by the attorneys. Since it is obvious that the court made its own findings with respect to attorney's fees and exercised its own discretion, we find no abuse of that discretion.

The judgment of the district court is, in all respects

AFFIRMED.