**Charles T. CORWIN, D.D.S., et al.,**
**Plaintiffs-Appellants,**

v.

**MARNEY, ORTON INVESTMENTS, a**
**General Partnership, et al.,**
**Defendants-Appellees.**

No. 85–2401.

United States Court of Appeals,
Fifth Circuit.

April 30, 1986.

Michael "Mickey" S. Tomasic, Houston, Tex., for plaintiffs-appellants.

Larry R. Veselka, Vinson & Elkins, David L. Burgert, Houston, Tex., for Marney, Orton Investments.

Porter & Clements, John A. Irvine, Gregory A. Bolzle, Houston, Tex., for Sidney Orton.

Barry Alan Brown, Goldberg, Kusin & Brown, Houston, Tex., for Venita Vancaspel & Co.

Before JOLLY, and HILL, Circuit Judges, and HUNTER,[*] District Judge.

ROBERT MADDEN HILL, Circuit Judge:

Plaintiff investors lost money in a Houston office building project and sued pursuant to federal securities laws and the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–68. The district court properly dismissed most of the securities claims on statute of limitations grounds, but the court erred in dismissing plaintiffs' claim under Rule 10b–5, 17 C.F.R. § 240.10b–5 (1985), because a fact issue existed as to whether limitations had run. We also reverse the district court's dismissal of the RICO claim because the dismissal was based on the absence of an alleged racketeering injury, a requirement recently rejected by the Supreme Court. Finally, we reverse the dismissal of the pendent state claims.

I. FACTS

Because the district court dismissed this case at a preliminary stage, our initial concern is how we should treat unresolved factual matters. Although the court disposed of the case on defendants' motions to dismiss for failure to state a claim, the court's acceptance of matters outside the pleadings makes such motions more properly treated as ones for summary judgment. See Fed.R.Civ.P. 12(b); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 (1969). On reviewing a summary judgment order, "we must view the evidence and any inferences to be drawn therefrom in the light most favorable to the party moved against to determine whether any genuine issue of material fact exists and whether the party seeking summary disposition is entitled to judgment as a matter of law." *Prinzi v. Keydril Co.*, 738 F.2d 707, 709 (5th Cir.1984). For the purposes of this appeal, we therefore relate the following facts in a light most favorable to plaintiffs.

Marney, Orton Investments, a general partnership composed of Ronald D. Marney and Sidney Orton, prepared a lengthy set of documents entitled "Confidential Private Offering Memorandum" to be sent to several individuals in Texas. The offering memorandum, dated November 1, 1980, offered investment opportunities in twenty-one units of a limited partnership known as Woodway III Office Building, Ltd. ("the building partnership"). The general partner in the building partnership was Marney, Orton Investments. Each limited partnership unit was priced at $60,000. Marney, Orton Investments formed the building partnership to own, develop, and operate a professional office building on a certain tract of land on Woodway Drive in Houston. Another limited partnership, Woodway III, Ltd. ("the land partnership") contributed this tract to the building partnership in exchange for nine other limited partnership units in the building partnership.

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

Charles T. Corwin and six others received this offering memorandum and each decided to invest. The six investors other than Corwin received information and advice from Venita VanCaspel, principal owner and chief executive officer of VanCaspel & Company, Inc., who promoted these investments and received commissions on funds invested. Each of the seven investors purchased one unit of the building partnership in December 1980, paying $30,000 in cash and signing a note for another $30,000 payable in November 1981. Each investor paid his note when due. Marney, Orton Investments made two "cash calls" of approximately $17,000 each in 1983 and 1984 and each of the investors responded. Thus each investor made a total investment of about $94,000.

After the building was completed Corwin became dissatisfied and hired an accountant, James R. Ferrel, to review the records of the building partnership. Ferrel's review began on May 2, 1984, and halted on July 31, 1984, when he was denied further access to records. Ferrel's partial investigation concluded that the land partnership's true equity in the contributed property was not fully disclosed by the offering memorandum. Ferrel also found that various construction and finishing costs were higher than stated in the offering memorandum and that various instances of managerial malfeasance had occurred, including undisclosed rent concessions to certain tenants and undisclosed payments to certain entities related to Marney, Orton Investments. Corwin also discovered that VanCaspel owned a substantial portion of the land partnership at the time she was promoting investment in the building partnership.

Corwin and the six other investors filed suit in federal district court on September 4, 1984. Named as defendants were Marney, Orton Investments, the estate of Ronald D. Marney (who had since died in a light plane crash), Suzanne M. Marney (his widow), MOH, Inc., and Marney Properties, Inc. (two Texas corporations originally owned by Marney and Orton that sold interests in the building partnership and managed its property), Sidney Orton [collectively "the Marney/Orton defendants"], VanCaspel and VanCaspel and Company, Inc. [collectively "the VanCaspel defendants"]. The complaint charged the defendants with violations of the Securities Act of 1933, sections 5(a), (c) [15 U.S.C. § 77e(a), (c)], § 12(2) [15 U.S.C. § 77l(2)], and § 17(a) [15 U.S.C. § 77q(a)]. The complaint also charged violations of the Securities Exchange Act of 1934, sections 10(b) [15 U.S.C. § 78j(b)] and 20(a) [15 U.S.C. § 78t(a)] and Rule 10b–5. A RICO claim was included, with alleged predicate acts being federal and state securities law violations, federal mail fraud, and various Texas criminal statutes. Finally, various state law claims were alleged, among them alleged violations of Texas securities laws, breach of contract, breach of fiduciary relationship, misrepresentation and common law fraud, statutory real estate fraud, malpractice, and conversion. Attached to the complaint were several affidavits from the investors and Ferrel.

The Marney/Orton defendants and the VanCaspel defendants each filed motions to dismiss, both arguing that the investors' claims were barred by the applicable statutes of limitations. The defendants also argued, *inter alia*, that the investors had failed to state a claim. The investors' response included a further claim that the VanCaspel defendants violated the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b–1 to 80b–21. In April 1985 the investors received a "cash call" letter from Suzanne Marney requesting an additional $16,667 from each investor. The district judge assigned to the case had resigned and the investors moved for a temporary restraining order in order to obtain an immediate hearing and prevent the forfeiture of their interests in the building partnership. The case was transferred to the docket of another district judge and eight days later he filed an order denying the temporary restraining order and dismissing all of the investors' claims.

The order dismissing the case read in full:

Plaintiffs' application for temporary restraining order is DENIED for the reason that there is no likelihood that Plaintiffs would prevail on the merits. There is no likelihood that the Plaintiffs would prevail on the merits because there appears from the face of the pleading that there is no sound basis for federal jurisdiction over this action. This is so because Plaintiff's claims under the Securities Acts are time barred and Plaintiffs' attempts to allege an action under RICO allege no "RICO damages" and seek recovery only for alleged injuries suffered as a result of predicate acts.

There being no basis for federal jurisdiction, all claims asserted by Plaintiffs are DISMISSED.

Judgment was entered for the defendants, and the investors appeal.

## II. DISCUSSION

### A. *Claims Under the 1933 Act and the Investment Advisers Act*

The investors' claims under sections 5(a), (c) [prohibiting the sale of unregistered securities] and 12(2) [prohibiting misleading statements in the sale of securities] of the Securities Act of 1933 are time barred. The investors received the offering memorandum in November 1980 and purchased their interests in the building partnership in December 1980, but did not bring suit to challenge the allegedly unlawful and misleading sale of unregistered securities until September 1984. The applicable limitations provision reads as follows:

No action shall be maintained to enforce any liability created under section ... 77*l* (2) [section 12(2) of the 1933 Act] of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l* (1) [section 12(1) of the 1933 Act, which prohibits violations of section 5, 15 U.S.C. § 77e] of this title, unless brought within one year after the violation upon which it is based. In no event shall any

such action be brought to enforce a liability created under section ... 77*l* (1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l* (2) of this title more than three years after the sale.

15 U.S.C. § 77m. This provision creates an absolute bar, and the normal tolling rules are not applicable to toll the three-year period. *Summer v. Land & Leisure, Inc.,* 664 F.2d 965, 968 (5th Cir.1981), *cert. denied,* 458 U.S. 1106, 102 S.Ct. 3484, 73 L.Ed.2d 1367 (1982). Because more than three years elapsed between the offer and sale and the filing of suit, these claims have expired.

■ The investors' claims under section 17(a) of the 1933 Act and under the Investment Advisers Act of 1940 were properly dismissed because the investors had no private causes of action under these provisions. This circuit has refused to imply a private cause of action under section 17(a), holding that this "general censure of fraudulent practices" does not meet the test of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (outlining a four-part test for determining when a private remedy is to be implied from a federal statute). *Landry v. All American Assurance Co.,* 688 F.2d 381, 384–91 (5th Cir.1982). Similarly, the Supreme Court has held that "there exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment advisers contract, but that the Act confers no other private causes of action, legal or equitable." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146, 157–58 (1979). The investors seek damages, not the voiding of an investment advisers contract, and there is no such private cause of action based on this statute.

### B. *Claims Under the 1934 Act*

The investors also advanced claims under section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 ["10b–5 claims"]. The 1934 Act does not fix a specific period of limitations within which a private litigant must bring a suit for dam-

ages, nor is any federal statute of limitations generally applicable to private suits for damages under 10b–5. However, courts have fixed appropriate limitations periods as a matter of federal common law. This circuit five years ago determined that the appropriate limitations period for 10b–5 claims in Texas was two years. *Wood v. Combustion Engineering, Inc.*, 643 F.2d 339, 341–46 (5th Cir.1981). The investors ask us to reconsider that decision or, alternatively, to apply a "discovery" rule which the district court evidently rejected. We reject the former suggestion, while we find merit in the latter.

■ The *Wood* court applied the rule that a court should adopt "the [limitations] period which the forum state applies to the state cause of action bearing the closest substantive resemblance to the implied cause of action arising under the federal securities laws." *Id.* at 342 (quoting *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 891 (5th Cir.1979)). *Wood* examined two Texas statutes which created causes of action resembling a 10b–5 claim: the Texas statute on fraud in real estate and stock transactions, Tex.Bus. & Com.Code Ann. § 27.01(a) (Vernon 1968) ["the fraud statute"], and the pre-1977 version of the Texas Blue Sky law, Tex.Rev. Civ.Stat.Ann. art. 581–33 (Vernon 1964). The fraud statute does not contain a time limit within which suit must be brought, but the two-year period of Tex.Rev.Civ. Stat.Ann. art. 5526 (Vernon 1958) (now codified in revised form at Tex.Civ.Prac. & Remedies Code Ann. § 16.003 (Vernon Supp.1986)) is applied to actions based on fraud. *E.g., Wood*, 643 F.2d at 342 n. 5; *Coastal Distributing Co., Inc. v. NGK Spark Plug Co., Ltd.*, 779 F.2d 1033, 1038 (5th Cir.1986). The Blue Sky law expressly provides that an aggrieved buyer of securities generally must sue within three years after discovery of the untruth or omission (or after discovery should have been made) or within five years after the sale. Tex. Rev.Civ.Stat.Ann. art. 581–33(H)(2)(a), (b) (Vernon Supp.1986).

The *Wood* court examined the elements of the fraud statute and the elements of the pre-1977 Blue Sky law, comparing each to the elements of 10b–5. "Two major considerations, which go to the very heart of the substantive causes of action" convinced the *Wood* court that the pre-1977 Blue Sky law was "significantly broader" than the fraud statute or 10b–5. 643 F.2d at 345. First, reliance was found to be an element of both the fraud statute and 10b–5, but not an element of the pre-1977 Blue Sky law. *Id.* Second, scienter was found to be an element of fraud and 10b–5, but not pre-1977 Blue Sky law. *Id.* Although expressly given less weight by the court than these two considerations, three other factors were mentioned as attributes of pre-1977 Blue Sky which distinguished it from fraud and 10b–5: (1) the lack of even a "due diligence" defense, (2) the availability of a remedy for purchasers but not sellers, and (3) the requirement of tender as a prerequisite to recovery. *Id.* at 345–46.

The Texas Blue Sky law was amended twice, in 1977 and again in 1979, but we find that these amendments do not alter the conclusion reached in *Wood*. The two "major considerations" of *Wood* have not changed. First, there is still no requirement of reliance. Second, scienter is still not required. We recognized that the three subsidiary factors of *Wood* have all changed: now the Blue Sky law includes a "due diligence" defense,[1] remedies are available to sellers as well as buyers,[2] and a new provision specified that any required tender could be made at any time prior to entry of judgment.[3] While these subsidiary considerations make the Blue Sky law

---

1. A seller or offeror is not liable if he "did not know, and in the exercise of reasonable care could not have known, of the untruth or omission." Tex.Rev.Civ.Stat.Ann. art. 581– 33(A)(2)(b) (Vernon Supp.1986).

2. Tex.Rev.Civ.Stat.Ann. art. 581–33(B) (Vernon Supp.1986). This provision also has a "due diligence" defense available for buyers who would otherwise be liable.

3. Tex.Rev.Civ.Stat.Ann. art. 581–33(E).

marginally more similar to 10b–5, we do not find the essential pillars of *Wood* to be weakened. *See Keys v. Wolfe,* 540 F.Supp. 1054, 1064–65 (N.D.Tex.1982) (Higginbotham, J.), *rev'd on other grounds,* 709 F.2d 413 (5th Cir.1983). Accordingly, we find no difficulty in reaffirming *Wood* in holding that the limitations period for 10b–5 actions in Texas is still two years.

Having determined the applicable period of limitations for 10b–5 actions, we must next decide when that period began to run. Although state law determines the period of limitations, federal law determines when the period begins. *Breen v. Centex Corp.,* 695 F.2d 907, 911 (5th Cir.1983). The period begins for 10b–5 " 'only when the plaintiff discovers, or in the exercise of reasonable diligence should discover, the alleged violations.' " *Id.* (quoting *McNeal,* 598 F.2d at 893 n. 11). Thus, the investors cannot recover under 10b–5 for violations which they had discovered, or in the exercise of reasonable diligence should have discovered, two years before suit was filed. Although many, if not all, of the alleged 10b–5 violations occurred at the time of the sale in December 1980, this discovery rule must be applied to determine whether the two-year period for filing suit is extended.

■ The defendants contend first that the investors never raised the discovery issue below and are barred from raising it for the first time on appeal. We recognize that as a general rule issues must be presented to the trial court to receive appellate consideration, unless to ignore them would result in a "fundamental miscarriage of justice." *See Mitchell v. M.D. Anderson Hospital,* 679 F.2d 88, 91–92 (5th Cir.

1982). The brief order of the district court dismissing all claims gives us no indication whether the discovery issue was considered. However, we find that the discovery issue was raised below, albeit in an oblique manner.

The investors' complaint, aptly described by defendants as "prolix and rambling" in its sixty-three pages of text and sixty-seven pages of attached affidavits and exhibits, suggested that the investors knew nothing about possible wrongdoing until Ferrel's audit. The complaint never mentioned the statute of limitations, tolling rules, or the discovery rule even though the 10b–5 claims were facially barred by the two-year period. The defendant's motions raising the limitations defenses anticipated this issue and included the charge that "Plaintiff's Complaint does not allege any facts from which this Court can conclude that Plaintiffs, in the exercise of reasonable diligence, could not have discovered the alleged inadequacies of the Offering Memorandum before September of 1982, ... two years before they filed this lawsuit." Responding to the defendants' motions to dismiss with another venture in meandering verbiage, the investors never explicitly stated that the discovery rule preserved their claims, although they cited extensively from *McNeal, Breen, Wood,* and other cases discussing the principles of the discovery rule. The discovery issue was thus fairly presented to the district court.[4]

■ Assuming, without deciding, that 10b–5 violations did occur, we hold that the district court erred in failing to apply the discovery rule to the investors' claims. If,

4. We have experienced our own frustration with the prolixity of the investors' counsel. At oral argument we requested him to file a letter brief to point out where he had raised the discovery issue. We found our answer buried in the middle of a thirty-two page brief which was packed with non-responsive record excerpts. On remand it would be appropriate for the district court to call to the attention of plaintiffs' counsel the requirement of Fed.R.Civ.P. 8(a) that a pleading be "a short and plain statement of the claim showing that the pleader is entitled to relief." We recognize that there is a degree of tension between this standard and Fed.R.Civ.P.

9(b), which calls for the circumstances constituting fraud or mistake to "be stated with particularity." However, "Rule 9 must be read in light of the basis pleading philosophy set forth in Rule 8.... Thus, although Rule 9(b) calls for fraud to be pleaded with particularity, the allegations still must be as short, plain, simple, direct, and concise as is reasonable under the circumstances." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1291 at 389 (1969). Rule 9(b) should not be read so as to obliterate this basic pleading philosophy. *See id.* § 1298 at 406–16.

as they allege, the offering memorandum and supporting documents were materially misleading or fraudulent, it is not immediately clear when the investors should have made this discovery. The defendants have as yet advanced no evidence on this issue, relying instead on their assertions that no 10b–5 violations occurred at all.[5] The investors have alleged and supported their contentions that they were not aware of 10b–5 violations until Ferrel's audit. Other than the initial offering memorandum and supporting documents, the defendants have identified no communications or occurrences which would have alerted the suspicions of a reasonably diligent investor. While such evidence may be produced later in this litigation, we find that at the least the investors have raised a genuine issue of material fact. Thus, the issue was inappropriate for resolution on summary judgment. *See* Fed.R.Civ.P. 56(c).

## C. *RICO*

■ The defendants concede that the articulated basis of the district court's dismissal of the RICO claims was erroneous. The district court dismissed because the investors alleged no "RICO damages" independent of the injuries suffered as a result of predicate acts. In an opinion filed after the district court's dismissal, the Supreme Court has held that RICO has no distinct requirement of "racketeering injury" separate from the harm of predicate acts. *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *see also R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1354 (5th Cir.1985). The investors have alleged financial injuries as a result of various predicate acts, including violations of 10b–5 and federal mail fraud statutes. These allegations are sufficient to withstand a motion to dismiss.[6] *See Armco Industrial Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475 (5th Cir.1986)

(mail fraud as RICO predicate act); *James v. Meinke,* 778 F.2d 200, 207 (5th Cir.1985) (10b–5 as RICO predicate act).

## D. *State Claims*

■ The district court dismissed the pendent state law claims for lack of subject matter jurisdiction. There was no diversity jurisdiction, and the district court had dismissed all of the federal claims which created federal question jurisdiction. A district court has "wide discretion" in deciding whether to hear a pendent claim. *United States v. Capeletti Brothers, Inc.,* 621 F.2d 1309, 1317–18 (5th Cir.1980). " '[I]f the federal claims are dismissed before trial, even though not in substantially a jurisdictional sense, the state claim should be dismissed as well.' " *Id.* at 1318 (quoting *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Because of our determination that claims under 10b–5 and RICO were erroneously dismissed at this early stage in the litigation, the district court's premise was incorrect. Since subject matter jurisdiction is now present, we reverse the dismissal of the state claims in order to enable the district court to exercise its discretion based on these new considerations. *See Hamman v. Southwestern Gas Pipeline, Inc.,* 721 F.2d 140, 144 (5th Cir.1983). In so ruling, we express no opinion on the merits of these claims.

## III. CONCLUSION

We affirm the district court's dismissal of the claims under the Securities Act of 1933 and the Investment Advisers Act of 1940. We reverse the dismissal of the claims under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. We reverse the dismissal of the RICO claims and the various state law claims. We re-

---

**5.** The defendants contend, as they did below, that the offering memorandum and supporting documents made full and complete disclosure of the transactions. The district court did not pass on the merits of the 10b–5 claims, and we express no opinion thereon. On remand, the

district court may find it appropriate to consider summary judgment motions on the merits.

**6.** We decline the defendants' invitation to proceed to issues not passed upon by the district court and to determine the timeliness or the merits of the RICO claims.

mand for further proceedings not inconsistent with this opinion.

AFFIRMED in part; REVERSED in part and REMANDED.