Charles T. CORWIN, D.D.S., et al., Plaintiffs–Appellants,

v.

MARNEY, ORTON INVESTMENTS, a General Partnership, et al., Defendants–Appellees.

No. 87–2771.

United States Court of Appeals, Fifth Circuit.

April 26, 1988.

Rehearing Denied June 3, 1988.

Michael S. Tomasic, Houston, Tex., for Corwin, et al.

Larry R. Veselka, David Lamb, Houston, Tex., for Marney.

John A. Irvine, Boyar, Norton & Blair, Houston, Tex., for Sidney Orton.

Stephen R. Kirklin, Jack J. Garland, Jr., Houston, Tex., Robert R. Robey, Dallas, Tex., for Venita Van Caspel.

Before THORNBERRY, GEE, and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants, investors in a Houston office building project, come to this court for a second time. They sued under the securities laws and the Racketeer Influenced and Corrupt Organizations Act (RICO) when their investment lost money. On their first appeal, we reversed a summary judgment for the defendants, holding that a fact issue existed as to whether limitations had run on the Rule 10b–5 claim. *Corwin v. Marney Orton Investments*, 788 F.2d 1063 (5th Cir.1986) [hereinafter *Corwin I*]. We also reversed the dismissal of the RICO claim and the pendent state-law claims. On remand the district court again dismissed all the claims. On summary judgment, the district court again held the Rule 10b–5 and RICO claims barred by the statute of limitations and exercised its discretion to dismiss the pendent state-law claims. We reverse.

### I. Facts

On this appeal from summary judgment, we must view the facts in the light most favorable to the appellants. *Prinzi v. Keydril Co.*, 738 F.2d 707, 709 (5th Cir.1984). The facts, viewed in this light, were fully

set forth in *Corwin I.* We repeat those facts that are relevant to this appeal.

Marney, Orton Investments, a general partnership composed of Ronald D. Marney and Sidney Orton, prepared a lengthy set of documents entitled "Confidential Private Offering Memorandum" to be sent to several individuals in Texas. This memorandum, dated November 1, 1980, offered investment opportunities in twenty-one units of a limited partnership known as the Woodway III Office Building, Ltd. ("the building partnership"). The general partner in the building partnership was Marney, Orton Investments. Each limited partnership unit was priced at $60,000. Marney, Orton Investments formed the building partnership to own, develop, and operate a professional office building on a certain tract of land on Woodway Drive in Houston. Another limited partnership, Woodway III, Ltd. ("the land partnership") had contributed this tract to the building partnership in exchange for nine limited partnership units in the building partnership.

Charles T. Corwin and six others received this offering memorandum and each decided to invest. The six investors other than Corwin received information and advice from Venita VanCaspel, principal owner and chief executive officer of VanCaspel & Company, Inc., who promoted these investments and received commissions on the funds invested. Each of the seven investors purchased one unit of the building partnership in December 1980, paying $30,000 in cash and signing a note for another $30,000 payable in November 1981. Each investor paid the note when due. Marney, Orton Investments made two "cash calls" of approximately $17,000 each in 1983 and 1984 and each of the investors responded. Thus, each investor made a total investment of about $94,000.

After the building was completed Corwin became dissatisfied and hired an accountant, James R. Ferrel, to review the records of the building partnership. Ferrel's review began on May 2, 1984, but was halted on July 31, 1984 when he was denied further access to records. From his partial investigation, Ferrel concluded that the land partnership's true equity in the contributed property was not fully disclosed by the offering memorandum. Ferrel also found that various construction and finishing costs were higher than stated in the offering memorandum and that various instances of managerial malfeasance had occurred, including undisclosed rent concessions to certain tenants and undisclosed payments to certain entities related to Marney, Orton Investments. Corwin also discovered that VanCaspel owned a substantial portion of the land partnership at the time she was promoting investment in the building partnership.

Corwin and the six other investors filed suit in federal district court on September 4, 1984. This was less than four years after the date on the offering memorandum and the date of their investments. Named as defendants were Marney, Orton Investments, the estate of Ronald D. Marney, Suzann M. Marney, MOH, Inc. and Marney Properties, Inc. (two Texas corporations originally owned by Marney and Orton that sold interests in the building partnership and managed its property), Sidney Orton, Venita VanCaspel, and VanCaspel and Company. The complaint charged the defendants with violations of the Securities Act of 1933, sections 5(a), 5(c), 12(2), and 17(a), 15 U.S.C. §§ 77e(a), (c), 77*l*(2), 77q(a). The complaint also charged violations of the Securities Exchange Act of 1934, sections 10(b), 15 U.S.C. § 78j(b), and 20(a), 15 U.S.C. § 78t(a), and Rule 10b–5. The complaint in addition included a RICO claim, with alleged predicate acts of federal and state securities law violations, federal mail fraud, and various Texas criminal statutes. Finally, the complaint alleged various pendent state law claims.

The district court originally granted the defendants' motion for summary judgment, dismissing all of the plaintiffs' claims. In *Corwin I*, we affirmed the district court except as to the dismissal of the claims under section 10(b), Rule 10b–5, RICO, and the state-law claims. 788 F.2d at 1069. We remanded those claims to the district court for further proceedings.

Following our remand, the defendants again moved for summary judgment. The plaintiffs responded with a motion for a continuance. The plaintiffs asserted that pursuant to a prior order, they had taken no discovery since the remand. Additionally, the plaintiffs noted that defendants' counsel, Larry Veselka, had agreed to advise the plaintiffs of which allegations in the complaint the defendants intended to contest so that the plaintiffs could prepare an amended complaint. Also, Mr. Veselka had agreed that an amended complaint was necessary, because *Corwin I* had affirmed the dismissal of several of the claims in the original complaint. The plaintiffs also filed a response to the motion for summary judgment. Thereafter, the plaintiffs filed a motion to amend their complaint. The district court denied this motion.

The plaintiffs then filed affidavits to be used as summary judgment evidence. The parties were given an opportunity for an "evidentiary hearing," but they all agreed that a hearing was unnecessary because "all the facts necessary for a complete and just adjudication were before the Court." The district court then granted summary judgment for the defendants. The court held that the plaintiffs should have discovered the misleading statements and omissions by December 1980, thus barring their securities claims under the applicable two-year statute of limitations. Next, the court held that the RICO claim was barred under a two-year statute of limitations as the most analogous state statute. Finally, the court dismissed without prejudice the state-law claims.

The plaintiffs appealed.

## II. Securities Limitations

The appropriate limitations period for the Rule 10b–5 claims in Texas is two years. *Wood v. Combustion Engineering, Inc.*, 643 F.2d 339, 346 (5th Cir.1981). The limitations period, however, does not begin to run until the plaintiffs have discovered, or reasonably should have discovered, the defendants' alleged misdeeds. *Breen v. Centex Corp.*, 695 F.2d 907, 911 (5th Cir.1983). On summary judgment, the district court held that the plaintiffs should have discovered any misleading or omitted statements by December 1980, and it dismissed the claims.

In *Corwin I* we noted that the plaintiffs had alleged and supported their contention that they did not know of the 10b–5 violations until Ferrel's audit, which occurred within the two-year time limit. 788 F.2d at 1069. Thus, the plaintiffs had raised a genuine issue of material fact on the issue of their actual knowledge of the alleged misdeeds. We will not reconsider this earlier determination. On the question of when the plaintiffs discovered the alleged misleading or omitted information, there exists an issue of fact. Unless this claim can be disposed of on another issue, a trial is required to determine when the plaintiffs discovered the improper information.

Even if the plaintiffs had no actual knowledge of the information, however, the limitations period would begin if the plaintiffs should have known of the misleading or omitted statements. In *Corwin I* we said that, if the offering memorandum and supporting documents were misleading or fraudulent, it was not clear when the plaintiffs should have made this discovery. *Id.* at 1068–69. We said this because the defendants had not presented any evidence on the should-have-known question. Additionally, we stated that "[o]ther than the initial offering memorandum and supporting documents, the defendants have identified no communications or occurrences which would have alerted the suspicions of a reasonably diligent investor." *Id.* at 1069. This statement, accompanied by our reversal of the summary judgment, implied that the initial offering memorandum and supporting documents were insufficient for a finding against the plaintiffs on this issue on summary judgment. We did, however, leave room for the defendants, after the remand, to produce evidence of other communications or occurrences that would have alerted the suspicions of a reasonably diligent investor. Thus, we did not foreclose the possibility of new evidence allowing summary judgment on the limitations

question based on when the plaintiffs should have discovered the alleged misstatements and omissions.

The only evidence the defendants now adduce to support their summary judgment—other than the initial offering memorandum and supporting documents—are some records filed with the state of Texas. The most important of these records is a document filed with the Texas Secretary of State disclosing Venita VanCaspel's ownership in the land partnership. The defendants argue that because Texas law often imputes constructive knowledge of information that could have been obtained from public records, *Sherman v. Sipper,* 137 Tex. 85, 152 S.W.2d 319, 321 (1941), the plaintiffs, as a matter of law, should have known of the information contained in these records. Thus, they argue the defendants should be barred by limitations from asserting any claims based on Venita VanCaspel's ownership interest.

Although the federal securities laws borrow statutes of limitations from state law, federal law determines when the limitations periods begin to run. *Corwin I,* 788 F.2d at 1068; *Breen v. Centex Corp.,* 695 F.2d 907, 911 (5th Cir.1983). It is federal law that imposes the discovery rule, and thus federal law should determine what circumstances and information should alert the suspicions of a reasonably diligent investor.

■ We cannot say as a matter of law that a reasonably diligent investor would look to all state records of which the investor might later, for some purposes, be charged with constructive knowledge. *See Briskin v. Ernst & Ernst,* 589 F.2d 1363, 1368 (9th Cir.1978) (holding that a question of fact existed on whether a reasonably prudent person would check an SEC registration statement). It seems plausible to us that a reasonable investor could rely on the offering memorandum, the supporting documents, and discussions with the promoter to disclose a promoter's ownership interest in the investment. Although the fact that a state law will impose knowledge on an investor for state-law purposes may be considered in determining what investi-

gations a reasonable investor would make, that fact alone is not sufficient to take the reasonableness issue from the hands of the fact finder.

It is true that there may be unusual circumstances that would alert an investor to begin a much more careful investigation of the investment than he ordinarily would undertake. *Cf. Westchester Corp. v. Peat, Marwick, Mitchell & Co.,* 626 F.2d 1212, 1217–18 (5th Cir.1980) (holding that plaintiffs had duty to investigate when they knew that auditors had withdrawn financial statement certification as a result of errors, that auditors had asked to withdraw from the audit unless released from liability, that the auditors were dismissed, and that two lawsuits had been filed alleging fraudulent financial statements). However, absent undisputed summary judgment evidence of such circumstances, summary judgment on the should-have-known question because of information external to that ordinarily used by investors should be rare. In the current case, the investors did not have knowledge of facts that would require them, acting as reasonably prudent investors, to investigate VanCaspel's ownership interests. *See id.* at 1217. They apparently had no suggestion that VanCaspel owned a substantial part of the land partnership until some time after Ferrel's audit.

■ In summary, we hold that a state law that imposes constructive knowledge of certain records for state-law purposes is, by itself, insufficient for finding as a matter of law that an investor "should have known" of the information in those records for federal securities law limitations purposes. An investor without reason to know of something untoward in the circumstances of the investment is not necessarily burdened with a duty to examine documents external to those normally used in the transaction. Normally, a fact issue will exist about whether a reasonably prudent investor would undertake such an external examination. There is no undisputed summary judgment evidence of unusual circumstances in this case that would clearly trigger a duty to investigate Venita Van-

Caspel's ownership in the land or the partnership. Therefore, although the fact finder might later determine that the plaintiffs should have known of VanCaspel's interests, summary judgment on that fact issue was improper.[1]

### III. RICO Limitations

■ The district court, applying a two-year statute of limitations to the RICO claim, dismissed the plaintiffs' RICO claim. Since the trial, the Supreme Court has decided *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). That case held that a four-year limitations period applies to civil RICO claims. *Id.*, 107 S.Ct. at 2767. Thus, we must reverse the district court's RICO limitations dismissal.[2]

### IV. Amending the Complaint

At a chambers conference after the first remand, the district court denied the investors' motion for leave to amend their complaint and to conduct further discovery. The investors contend that this denial amounted to an abuse of the trial court's discretion. They point to a letter they received a few weeks before the trial court denied their motion. The letter was from Marney Orton's counsel and stated that because of the prior appeal, an amended complaint would be necessary so that the defendants could determine which claims remained material to the case. The investors point to Federal Rule of Civil Procedure 15(a), which says that "a party may amend the party's pleading only by leave of the court *or by written consent of the adverse party*" (emphasis added).

It is clear that the district court's decision denying the amendment should not be reversed absent an abuse of discretion. *See, e.g., Wedgeworth v. Fibreboard Corp.*,

706 F.2d 541, 546 (5th Cir.1983); *Addington v. Farmer's Elevator Mutual Ins. Co.*, 650 F.2d 663, 666 (5th Cir. Unit A 1981). In exercising its discretion, the district court is to consider various factors, including undue delay, bad faith or dilatory motive, undue prejudice to the opposing party, and futility of the amendment. *Addington*, 650 F.2d at 666. However, although our reviewing standard is abuse of discretion, "the policy of liberal amendment directs that 'unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'" *Wedgeworth*, 706 F.2d at 546 (quoting *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir.1981)).

■ In this case we believe that the district court abused its discretion. Rule 15(a) clearly contemplates agreement of the opposing party as an independent reason for granting leave to amend. Although the defendants now assert that the motion was properly denied because of undue delay, dilatory motive, undue prejudice, and futility, their assertion is weakened by their letter's clear expression of acquiescence to an amendment, and their statement in the letter that an amendment would be for their own benefit. The defendants agreed to an amended complaint, and Rule 15(a) requires that they remain bound by that agreement. Therefore, we reverse the denial of the investors' motion for leave to amend their complaint.

### V. Discovery

Prior to the first appeal, the trial judge entered an order restricting discovery to those matters relating to the defendants' motion to dismiss. This order is still in effect. Thus, the investors have not yet taken any substantial discovery. After the

---

1. The defendants also contend, as they did in the district court and on the first appeal, that the plaintiffs' securities claims fail as a matter of substantive securities law. *See Corwin I,* 788 F.2d at 1069 n. 5. They urge us to consider those issues in this appeal. The district court has not passed on the merits of the substantive claims, and we feel that these issues should be first considered by the district court. Thus, we

express no opinion on the merits of the plaintiffs' substantive claims.

2. As in the first appeal, we decline the defendants' invitation to proceed to the merits of the RICO claims. *See Corwin I,* 788 F.2d at 1069 n. 6. Nothing has changed since the first appeal. The district court still has not reached these substantive issues.

first remand, the investors moved for an opportunity to take further discovery.

Prior to granting the defendants' motion for summary judgment, the district court offered the parties the opportunity for an "evidentiary hearing" on those issues relevant to the motion. All parties agreed, however, that a hearing was unnecessary, because "all facts necessary for a complete and just adjudication were before the court."[3] The court denied the investors' motion and granted summary judgment for the defendants.

The district court has broad discretion in limiting discovery. *Mayo v. Tri-Bell Industries, Inc.,* 787 F.2d 1007, 1012 (5th Cir.1986). Its rulings will be reversed only when arbitrary or clearly unreasonable. *Id.* More specifically, we have held that a trial court may properly exercise its discretion to stay discovery pending a decision on a dispositive motion. *Scroggins v. Air Cargo, Inc.,* 534 F.2d 1124, 1133 (5th Cir. 1976). It would be wasteful to allow discovery on all issues raised in a broad complaint when, for example, the case will not reach trial because of the expiration of a limitations period.

■ We cannot say that the district court abused its discretion in this case, especially in light of the parties' agreement that the court had all necessary facts before it. The investors argue that all that was meant by that agreement was that they believed they had enough summary judgment evidence to create a fact issue and defeat the summary judgment. As it turns out, the investors were, at least partially, correct in their belief. At least with respect to the limitations questions, no further discovery was necessary to defeat the defendants' motion. Of course, the district court will likely grant an opportunity for more discovery if a trial on the merits is

required, and the court may want to allow more discovery in light of the investors' amended complaint. Further, because the court erroneously believed limitations to be the dispositive issue, it may want to exercise its discretion to allow additional discovery before deciding the summary judgment motion regarding the substantive claims. However, these decisions are left to the district court on remand.

## VI.  Pendent State–Law Claims

■ When the district court dismissed the federal claims, it also dismissed the pendent state-law claims. A trial court has wide discretion in deciding whether to retain jurisdiction over pendent claims after disposing of the federal claims that created jurisdiction. *United States v. Capeletti Brothers, Inc.,* 621 F.2d 1309, 1317–18 (5th Cir.1980). If, however, the federal claims are dismissed before trial, the state claims normally should be dismissed as well. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Corwin I,* 788 F.2d at 1069.

As in *Corwin I,* we determine that the district court erroneously dismissed the securities and RICO claims. Thus, the district court's premise for dismissing the state claims was incorrect. For this reason, we reverse the dismissal of the state claims. In so ruling, we express no opinion on the merits of these state claims.

## VII.  Conclusion

For the reasons set forth in this opinion, the judgment of the district court is REVERSED. The case is REMANDED for proceedings consistent with this opinion.

**3.** After reviewing the record, we remain unsure about why the judge and the parties were discussing an evidentiary hearing at the time the judge was considering a motion for summary judgment. Live *testimony is not considered on* summary judgment. *See* Fed.R.Civ.Pro. 56(c). There is nothing in the record indicating that the parties agreed to try the case on cross motions for summary judgment. In fact, the plaintiffs never moved for their own summary judgment. Additionally, in the district court the parties frequently referred to the existence or lack of "summary judgment evidence." The parties apparently considered the motion to be only an ordinary motion for summary judgment. We therefore consider these statements only insofar as they relate to whether the plaintiffs waived further discovery by agreeing that the court had all the facts necessary for a complete adjudication.